UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| A.K., a minor child, by and through his Parents and Guardians, S.K. and J.K., | Civ. No. 23-1985 (PAM/JFD) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Minnesota State High School League, and Troy Stein, individually and in his official capacity as President of the Board of Directors for the Minnesota State High School League, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted and Plaintiff's claims are dismissed.

**BACKGROUND**

In the fall of 2022, Plaintiff A.K. was entering 9th grade. (Compl. (Docket No. 1-1) ¶ 6.) He resides in Montgomery, Minnesota. (Id. ¶ 3.) There are at least two public high schools available to residents of Montgomery: Tri-City United High School, located in Montgomery, or Jordan High School, in Jordan, Minnesota. (Id. ¶ 7.) A.K. initially decided to attend Tri-City and to participate on that school's freshman football team. (Id. ¶ 11.) After attending the first week of practice in August before classes began, however, A.K. decided that he would rather attend Jordan High School. (Id. ¶ 15.) He enrolled at Jordan High School for the first day of classes and has been a student there since. (Id. at ¶ 16.)

In November 2022, A.K. joined the varsity wrestling team for Scott West, a cooperative athletic program for Jordan and Bell Plaine High Schools. (Id. ¶¶ 17-18.) In January 2023, however, A.K.'s parents learned that Jordan High School had declared A.K. ineligible for varsity sports because Defendant Minnesota State High School League ("MSHSL" or "League") rules deemed him a transfer student to Jordan by reason of his participation in football practices at Tri-City. (Id. ¶¶ 22-23.)

The relevant MSHSL bylaw provides that a "transfer student" is ineligible for participation in varsity athletics for one calendar year after the transfer unless the student meets certain criteria not relevant to this case. (Madison Decl. (Docket No. 5) Ex. 1 at 7[1] (Bylaw 111.1.B(i)-(v)). A "transfer student" is defined as a student

> who discontinues enrollment and attendance in any [Minnesota-based] high school, public or non-public, home school, or online . . . and enrolls in any high school in Minnesota, or outside of MN. **Essentially, a transfer occurs anytime the school of record changes.** A transfer is considered complete when the student attends class at the new school or participates with an athletic program prior to attending school (fall season only), whichever is earlier.

(Id. at 10 (emphasis in original).) Although the transfer student is prohibited from varsity interscholastic athletics, the student may participate in other ways, such as on the school's junior varsity or intramural teams, and can practice and participate in scrimmages, previews, and "jamborees" with the varsity team. (Id.)

Jordan High School appealed to the MSHSL, arguing that freshman football was not an activity sponsored by the MSHSL and thus the transfer rule did not apply to A.K.

---

[1] Citations to this document use the ECF pagination.

(Id. ¶ 25.) The MSHSL denied the appeal, and A.K. and his parents secured legal representation. (Id. ¶¶ 26-27.) The MSHSL granted A.K. a hearing before the Executive Committee to review the denial. (Id. ¶ 31.) That hearing, however, was scheduled to take place after the rosters for the varsity wrestling section playoff meets were due. (Id. ¶ 30.) A.K.'s lawyer sent several emails to the MSHSL before the hearing setting forth A.K.'s arguments regarding the application of the transfer rule, but neither the lawyer nor A.K.'s parents attended the Executive Committee hearing. (Id. ¶ 37.)

The Executive Committee upheld the previous determination that A.K. was ineligible to participate in varsity athletics because of the League's transfer rule. (Id. ¶ 39.) A.K. did not participate in the section meet and thus did not qualify for the state wrestling tournament in 2023, although the Complaint claims that he was at one time the ninth-ranked wrestler in the state in his weight class. (Id. ¶¶ 21, 42.)

A.K., through his parents J.K and S.K., initially filed this lawsuit in Rice County. The Complaint contains two causes of action against the League and the League's President, Troy Stein. Count one claims that participation in varsity athletics is a property interest and the MSHSL's decision that A.K. could not participate violated his substantive and procedural due-process rights. Count two contends that the MSHSL's bylaws are a contract between the MSHSL and student-athletes, and that the MSHSL's decision breached that contract. A.K. seeks compensatory and punitive damages for the alleged violations. Defendants removed the case to federal court and brought the instant Motion.

**DISCUSSION**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in A.K.'s favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**A.    Due Process**

A.K. raises two due-process claims. First, he takes issue with the procedures the League used to deprive him of his alleged property interest in varsity athletics. Second, he contends that the League violated his substantive due-process rights.

**1.    Procedural Due Process**

A claim that the League violated A.K.'s procedural due-process rights has two elements. A.K. must plausibly plead that the League deprived him of a life, liberty, or property interest that the 14th Amendment protects, and that this deprivation was accomplished without an adequate process such as a hearing or other opportunity for review. J.K. ex rel. Kaplan v. Minneapolis Pub. Sch., 849 F. Supp. 2d 865, 870 (D. Minn. 2011) (Schiltz, J.). Property interests are generally created by state law, and the United States Constitution will "protect[] a person's state-created property interest only if the

4

person has a 'legitimate claim of entitlement' under state law to that interest." Id. at 871 (quoting Goss v. Lopez, 419 U.S. 565, 573 (1975)).

Minnesota students undoubtedly have a state-created property interest in a public education. See id. Minnesota students may also have a state-created property interest in participation in interscholastic activities. Giblin v. Minn. State High Sch. League, No. 4:81cv767, 1982 WL 963044, at *3 (D. Minn. Jan. 15, 1982) (Murphy, J.) (finding that, under Minnesota law, "eligibility to participate in interscholastic sports is part and parcel of the right to education"). The question in this case is whether the state-created interest in a public education extends not just to participation in interscholastic activities in general, but to participation in varsity athletics specifically.

The Minnesota Supreme Court has noted that "participation in interscholastic activities" is "an important and integral facet of the youth's education process." Thompson v. Barnes, 200 N.W.2d 921, 926 n.11 (Minn. 1972). Thus, decisions of this Court have found it likely that "Minnesota law gives students a legitimate entitlement to participate in interscholastic sports, and that students must therefore receive due process before they are excluded from such sports." J.K., 849 F. Supp. 2d at 877; see also Giblin, 1982 WL 963044, at *3. But no case in this District has definitively held that a student has a property interest in participation in varsity sports.

A.K. relies on decisions in this District evaluating preliminary injunctive relief in the context of MSHSL eligibility, contending that these decisions mean that there is a protectable property interest in varsity athletic participation. Putting aside that all of the decisions involved a preliminary determination of likelihood of success on the merits, and

5

thus made no final determination on the issue, none of the decisions is as pertinent to A.K.'s arguments as he asserts. In Giblin, for example, although the student plaintiffs challenged the MSHSL's transfer rule that prohibited them from playing varsity ice hockey at their new school, the students also averred that the rule would prevent them from playing competitive hockey altogether. Giblin, 1982 WL 963044, at *2. A.K. does not make a similar allegation with respect to wrestling. Likewise, the determination that a student had a likelihood of success on his claim that he had a protectable property interest in playing varsity hockey at his new school was "preliminary." W.D. ex rel. M.J.D. v. Minn. State High Sch. League, No. 12cv2892 (JRT/SER), 2012 WL 5985514, at *4 (D. Minn. Nov. 29, 2012) (Tunheim, J.).

Moreover, the decisions in both Giblin and W.D. rested in part on an assumption that the MSHSL's own procedures for review of eligibility decisions created a property interest in continued athletic eligibility. DeLaTorre v. Minn. State High Sch. League, 202 F. Supp. 3d 1046, 1057 n.8 (D. Minn. 2016) (Ericksen, J.); W.D., 2012 WL 5985514, at *5; Giblin, 1982 WL 963044, at *3. That assumption in turn rests on Wilson v. Robinson, 668 F.2d 380 (8th Cir. 1981), which held that an employer's promulgation of procedures for terminating an employee's employment created a property interest in continued employment. DeLaTorre, 202 F. Supp. 3d at 1057 n.8. The Eighth Circuit has since overruled this holding, finding that "the existence of procedures governing one's continued employment cannot, standing alone, create a property right to continued employment." Mulvenon v. Greenwood, 643 F.3d 653, 658 (8th Cir. 2011); see also Stow v. Cochran, 819 F.2d 864, 867-68 (8th Cir. 1987) ("Wilson v. Robinson has effectively been overruled

6

insofar as it holds that 'procedural rights' alone can create an independent substantive property right . . . when none would otherwise exist.").

Although a student's "interest in participating in interscholastic sports is a substantial and cognizable one," Brenden v. Indep. Sch. Dist. 742, 477 F.2d 1292, 1299 (8th Cir. 1973), "there is no clearly established right of parents to have their children compete in interscholastic athletics." McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1211 (8th Cir. 1992). The DeLaTorre decision thoroughly addressed the decisions in this area and ultimately determined that Minnesota law does not create a property right in "eligibility for interscholastic varsity athletic competition." DeLaTorre, 202 F. Supp. 3d at 1058; see also Peterson v. Indep. Sch. Dist. No. 811, 999 F. Supp. 665, 674 (D. Minn. 1998) (Doty, J.) (finding "no property or liberty interest exists in a student's participation in extracurricular activities"). The reasoning in DeLaTorre is persuasive.

The question whether Minnesota would recognize participation in interscholastic activities in general as a protectable property interest is a "difficult" one. J.K., 849 F. Supp. 2d at 875. But the question whether Minnesota would recognize a property interest in participation varsity interscholastic athletics specifically is not. The answer to that question is "no."

And even assuming that participation in varsity interscholastic sports is a property interest, the deprivation of that property interest runs afoul of the Constitution only if it is accomplished without due process. Here, the League provides procedures to review a determination that a particular student is not eligible to participate in varsity athletics, and A.K. availed himself of those procedures. Due process does not require a favorable

7

decision, only a decision rendered after giving the interested person notice and an opportunity to be heard. Pietsch v. Ward Cnty., 446 F. Supp. 3d 513, 538 (D.N.D. 2020) ("Procedural due process mandates a meaningful opportunity to be heard, not a guarantee of a favorable outcome."). A.K. received all of the process he was due.[2]

A.K. contends that he did not receive adequate notice that participation in freshman football would trigger the transfer rule. See Coffman v. Trickey, 884 F.2d 1057, 1060 (8th Cir. 1989) ("A fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited."). But A.K. has not plausibly pled that that the MSHSL bylaws did not give him notice that he would be considered a transfer student after participating in freshman football at one school then attempting to wrestle at a different school.

Pointing to the definition of "enroll" in the MSHSL bylaws, A.K. argues that freshman football is not an activity sponsored by the MSHSL and thus the transfer rules were not triggered by his starting to play freshman football. The bylaw provides: "For purposes of determining student eligibility a student is enrolled in a school when they attend classes or participate in a MSHSL sponsored program prior to attendance." (Madison Decl. Ex. 1 at 10.) A.K. asserts that the bylaws define "League-sponsored

---

[2] At the hearing, A.K.'s counsel conceded that the League had provided A.K. with sufficient process. Because "[t]he fundamental requirement of due process is that a party shall be afforded the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 835 (8th Cir. 2010) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)), this concession alone dooms A.K.'s procedural due-process claim.

athletic activity" as "interscholastic athletic activities . . . at the 10th-12th grade levels (typically B-squad, Junior Varsity, and Varsity)." (Id. at 6 n.1.)

But the "10th-to-12th grade" definition pertains to a different eligibility bylaw, Bylaw 110.00, which covers 7th and 8th grade students' participation in MSHSL athletics. Bylaw 111.00, which is at issue here, clearly states that a transfer student is ineligible to participate in varsity athletics at his new school if he "participates with an athletic program prior to attending [that] school . . . ." (Id. at 10.) There is no "League-sponsored" qualifier to the term "athletic program," and A.K's argument on this point is unavailing.

In any event, A.K.'s claim that he did not receive notice of this requirement is belied by his own allegations. He acknowledges that he signed a MSHSL eligibility brochure before beginning football practice. (Compl. ¶ 12.) That brochure states, "For transfer eligibility purposes participation in a school program is considered full enrollment at that school." (Madison Decl. Ex. 6 at 52.) A.K. therefore had notice that participating in freshman football at Tri-City would make him a "transfer student" under League rules, so that if he switched schools, he would be ineligible for varsity athletics for one year.

There is no dispute that the procedures the League provided to review A.K.'s varsity eligibility were sufficient. The League provided a review hearing at which A.K., his parents, and his legal representative could have appeared and proffered evidence and argument. This review hearing was held a week after the League granted A.K. the hearing; that the hearing occurred after section rosters were due does not mean that the hearing violated A.K.'s due-process rights in light of the nature of the interest involved. See Wooten v. Pleasant Hope R-VI Sch. Dist., 270 F.3d 549, 551 (8th Cir. 2001) (finding post

9

athletic-team suspension meeting with a coach and school administrators at which student could give her version of events was sufficient process "especially when we consider the nature of the interest involved").  A.K. has not plausibly pled a violation of his procedural due-process rights.

### 2. Substantive Due Process

To plead a violation of his substantive due-process rights, A.K. "must allege that [the League's] action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law.'"  Young v. City of St. Charles, Mo., 244 F.3d 623, 628 (8th Cir. 2001) (quoting Anderson v. Douglas Cnty., 4 F.3d 574, 577 (8th Cir. 1993)).  A decision violates an individual's substantive due-process rights only "if there is no rational basis for a decision or a decision is motivated by bad faith or ill-will."  Peterson, 999 F. Supp. at 673.  "The theory of substantive due process is properly reserved for truly egregious and extraordinary cases."  Myers v. Scott Cnty., 868 F.2d 1017, 1018 (8th Cir. 1989); see also Quinn v. Doherty, No. 22-CV-369 (ECT/BRT), 2022 WL 16554574, at *11 (D. Minn. Oct. 31, 2022) ("To state a substantive due process claim . . . , a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience.") (quotation omitted).

Given the conclusion above that A.K. did not have a protected property interest in varsity athletic eligibility, he cannot establish any violation of his substantive due-process rights in the first instance.  But even assuming he had such an interest, the League's conduct here does not rise to the level required for a substantive due-process claim.  See Riley v. St. Louis Cnty., 153 F.3d 627, 631 (8th Cir. 1998) (upholding Rule 12(b)(6) dismissal of

substantive due-process claim where plaintiff did not allege "sufficiently outrageous" government conduct); see also Quinn, 2022 WL 16554574, at *11 (finding conduct of official who removed children from their home and placed them in an unsuitable foster home did not shock the conscience for purposes of substantive-due-process claim). A.K. cites no authority holding that a decision involving varsity athletic eligibility shocks the conscience or is otherwise outrageous, and his substantive-due-process claim must be dismissed.

**B.     Contract**

A.K. also contends that the League's conduct constitutes a breach of contract. To state such a claim under Minnesota law, A.K. must plausibly plead the existence of a contract—a sufficiently definite offer, acceptance of that offer, and consideration exchanged—as well as a breach of the contract's terms. See Bohnhoff v. Wells Fargo Bank, N.A., 853 F. Supp. 2d 849, 854 (D. Minn. 2012) (Doty, J.) ("Formation of a contract requires 'a specific and definite offer, acceptance and consideration.'") (quotation omitted); Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC, 493 F. Supp. 3d 764, 770 (D. Minn. 2020) (Schiltz, J.) ("[T]he elements of a breach-of-contract claim [are] '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent . . . and (3) breach of the contract by defendant.'") (quotation omitted).

A.K. cites no authority supporting his allegation that the MSHSL's bylaws can be construed as a binding contract, and it is unlikely that any Minnesota court would so hold. But A.K.'s contract claim also fails because he has not plausibly pled a breach of the bylaws in the first instance. As addressed above, the MSHSL's bylaws clearly provide that

participation in a school activity constitutes enrollment at that school, making the student ineligible to participate in varsity athletics at a different school. Without a breach, there can be no claim for breach of contract.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss (Docket No. 3) is **GRANTED**; and

2. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:     August 21, 2023              *s/Paul A. Magnuson*
                                         Paul A. Magnuson
                                         United States District Court Judge